Alice A. Joslin
vs.                              Eq. No. 12657.
Elijah Astle, Jr.

March 26, 1935.

CHURCHILL, J. Heard on bill, answer and proof.

This is a bill to establish a trust in favor of the complainant on a lease and sub-lease of certain real estate of which the respondent is the lessee in the first instance and the lessor in the second instance.

The real estate involved is a business block in Pawtucket styled the "Lee Block" and formerly owned by Thomas A. Lee, who was the father of the complainant and of the wife of the respondent, Elijah Astle, Jr., and of a son, Frank Lee.

In 1901 the Lee Block was occupied by Radikin & Cooney, who held under a lease which at that time had seven years to run. On March 23, 1901, Lee executed a lease of the same premises to the respondent, Elijah Astle, Jr., for a term of twenty-five years, such term commencing at the termination of the lease to Radikin & Cooney. The rent reserved was at the rate of $4500 a year, the lessee to pay taxes, water rates and insurance. This lease was not immediately delivered after execution, was recorded July 8, 1908, and possession was taken by the respondent the same year.

Thomas A. Lee died in 1915 and by his will, executed on May 12, 1910, devised the Lee Block to his two daughters and subjected the property to a charge of $1000 a year in favor of his son Frank for life, with a charge of $300 a year in favor of his son's wife and children, extending five years after the death of his son, and with certain other charges on the property for the benefit of Frank Lee. The respondent Astle was made executor of the will.

The rents due from Astle as lessee to the two devisees, Mrs. Joslin and Mrs. Astle, were not paid from October 1915 to February 1916, being held

back for a so-called reserve, but from that date forward he paid $100 a month to each of the sisters until some time in September 1920. On October 31, 1919, Astle sub-let the entire premises to Waldorf System, Incorporated, hereinafter called Waldorf System, for a term commencing November 1, 1919, and running to April 30, 1933. This lessee was to pay a rental of $8550 for the first five years and $9000 during the remainder of the term. Taxes, water rates and insurance were to be paid by the lessee.

Negotiations for an extension of the Waldorf System lease began between Astle and the Waldorf System soon after the execution of this lease and June 19, 1920, Astle procured from the complainant an extension of his own lease for a term of 10 years and at a rental of $5550 a year.

On July 1, 1920, the lease of the Waldorf System was extended for a term of ten years from and after April 30, 1933, the extended term carrying a rental of $11,300.

It is on the relationship existing between Mrs. Joslin, the complainant, and Elijah Astle, Jr., and on the acts and representations of Astle in procuring the extension of his own lease, that the complainant seeks to establish a trust, and, therefore, it is necessary to ascertain with as much precision as the testimony makes possible just what the relationships were between the parties in respect to the Lee Block and the interest of the complainant therein, and what were the circumstances surrounding the execution of the extension of the Astle lease.

Thomas A. Lee, according to Astle, made him the lessee of the property because Lee felt that Astle was the only one of his near relatives who was capable of operating it. He did not think that his son Frank should have the management of the property because he had had no business experience and for various reasons preferred Astle to his other son-in-law, Mr. Joslin.

It is difficult to resist the conclusion that what Lee actually intended was to make Astle a trustee of the property for the benefit of his three children and that the machinery of a lease was used to carry out this purpose. The contents of his will, executed two years after Astle went into possession under the lease, confirms this view of the real character of the transaction.

Mrs. Joslin is a woman now about 80 years old. During all the time covered by the transactions in question, she was inexperienced in business affairs and entirely relied—at least up to 1933 —on the guidance and advice of the respondent Astle.

Immediately after the death of Thomas A. Lee in 1915, at a family conference it was agreed by Mrs. Joslin, Mrs. Astle and Elijah Astle, Jr., and at the latter's solicitation, that he (Astle) should have the management of the Lee Block. This arrangement was carried out and Astle clothed himself with the office of a trustee in respect to this property. He paid the charges imposed on the property by the will, paid interest on the mortgage on the property, and paid over to the two co-owners the balance of the rent accruing under his lease. In addition to this, he took over and arranged the settlement of the charges in favor of the children of Frank Lee. Mrs. Joslin entrusted him with the details of the management and control of the property and relied on his advice. This relationship prevailed down to and through the time of the negotiations for the Waldorf System lease, the extension of the Astle lease, and continued to within a short time before the institution of this suit.

Without going further into details, on the evidence I find that from the time of the death of Thomas A. Lee until a short time prior to the filing of this bill of complaint, the respondent had charge of all matters relating to the complainant's interest in the estate of Thomas A. Lee and in the Lee Block with her consent and by an agreement with her, and throughout such time the respondent was, and acted as, the confidential business adviser of the complainant in all matters relating to her interest in the said property, and that the complainant entrusted the management and protection of her interest in the property to the respondent, and that she relied on and was guided by his advice, and that the respondent gave the complainant to understand that he was managing the property in the interest of herself and her sister, Mrs. Astle.

A matter of some importance in its bearing on the nature of the relationship between Astle and Mrs. Joslin, and its bearing on the execution of the extension of the Astle lease by Mrs. Joslin is the extent of her knowledge of the existence of this lease and its contents.

It may be said here that the matter of the Astle lease was enveloped in secrecy from the start. It was not delivered until seven years from its execution and not recorded until 1908, and on the weight of the credible evidence I find that it was not mentioned at the family conference which took place after the death of Mr. Lee, and at no time was the lease ever shown to or discussed with or made known to Mrs. Joslin by Astle up to June 20, 1920.

The respondent Astle conducted the business affairs of the two sisters as far as their interests in the Lee Block were concerned in exactly the same fashion as though he had been a trustee under the lease rather than the lessee.

Mrs. Joslin and her daughter both testified positively that they had no knowledge of the lease until just before the commencement of this suit. Mr. and Mrs. Astle were just as positive that Mrs. Joslin did have such knowledge. Mrs. Joslin at the time of the hearing was 80 years old and was subjected to a severe cross-examination in regard to a multitude of transac-

tions in which many documents were involved, and she naturally became confused over some of the details. She did, in the course of such examination, make statements which would give some color to the argument that she knew about "a lease." What lease she had in mind or whether it was a lease to Astle or to someone else, is not clear, but it is clear that she knew nothing of its contents.

One significant bit of testimony is rather convincing as to her knowledge of the Astle lease. Her daughter testified that when Judge Leahy told her in 1934 that there was a lease by Thomas A. Lee to Astle, she exclaimed, "I can't believe it".

Taking all the testimony on this point into consideration, I find that previous to the time when Mrs. Joslin signed the extension of the Astle lease on June 19, 1920, she did not know that Astle had an existing lease of the entire Lee Block, and that prior to that time Astle did not disclose that fact to her.

The exact time when serious negotiations began between the Waldorf System and Astle for an extension of their lease can not be ascertained from the evidence, but I find that negotiations began before Astle had his first conference with Mrs. Joslin on the subject, and that an offer of $11,300 for a ten year extension of the Waldorf System lease had been made by an agent of the lessee to Astle prior to his first conference with Mrs. Joslin on the subject of an extension.

The extension of the Astle lease was signed by Mrs. Joslin on June 19, 1920, and shortly before this time—a period which is variously stated by the witnesses as a week to a month—Astle sought out Mrs. Joslin and broached the subject of a change in the rental coming from the Lee Block.

Mrs. Joslin and her daughter testified substantially that Astle told Mrs. Joslin, when opening the subject, that he did not desire to have charge of the

Lee Block any longer; that it took too much of his time; that he got nothing out of it, and that they (meaning Mrs. Astle and Mrs. Joslin) had a chance to let the Lee Block to the Waldorf System, and if this arrangement was made, it would mean $1000 more rent, or an increase of $500 for each of them; that on a question from Mrs. Joslin whether it would be a good thing to do, Astle recommended it, and on Mrs. Joslin signifying her intention, Astle said he would have the necessary papers prepared to carry this out and would come with the papers for her to sign; that a short time after this Astle came to Mrs. Joslin and sent for his counsel, who came with the papers; that a document was signed by Mrs. Joslin; that she did not read it over but relied on what Astle had told her, believing it to be a lease to the Waldorf System, and that she did not know that it was in fact an extension of the Astle lease and that she did not at that time know that any such lease was in existence.

It is undisputed that she did not take any independent advice and there is no pretence that Astle advised her to get any such advice.

Mr. and Mrs. Astle denied the greater part of this testimony. The gist of their testimony is that Astle, prior to June 19, 1920, told Mrs. Joslin that he would give $1,000 more rental a year if he could get an extension of ten years on his lease; that after some questioning, she agreed to this; that Astle at no time told her of the sub-lease to the Waldorf System or of negotiations which were pending for an extension thereof at a relatively large increase in rental; that Mrs. Joslin and Astle read over the extension of the Astle lease and that she executed and acknowledged it.

Counsel for Astle, who prepared the extension and who was present at the time of its execution, was not called by the respondent as a witness.

After weighing all the testimony, the Court finds the facts to be that the re-

spondent Astle, while negotiations were pending for a renewal of the Waldorf System lease, and after an offer had been received by him for such an extension at a largely increased rental, in substance represented to Mrs. Joslin that he did not desire to carry on the management of the Lee Block any longer, that he got nothing out of it, that she and Mrs. Astle had an opportunity to lease the Lee Block to the Waldorf System at an increased rental of $1,000 a year over the income then being received; that he advised her to enter into a lease to that effect; that she relied on his advice and on the representations made as to the proposed lease to the Waldorf System; that he did not disclose to her the actual rental being received from the Waldorf System, nor disclose to her the fact that negotiations were then pending for an extension of the Waldorf System lease which carried an offer of a largely increased rent for the period of the extension or that he himself had a lease of the Lee Block; that the complainant did not read over the extension of the Astle lease nor know the contents thereof or of the document as a whole, but that she relied on the representations of the respondent as to the nature of the transaction in which she was engaged and that she did not know the document she signed was an extension of the Astle lease but believed it to be a document necessary to secure the Waldorf System as a tenant of the Lee Block, and that Astle so represented the act to her prior to her signature to the extension; and I further find that under the circumstances and considering the character of the relations between the complainant and respondent in respect to the Lee Block, the complainant was not guilty of negligence in not reading the document before she executed it. And I further find that Astle has not paid over to Mrs. Joslin her proportion of the net income arising under his lease to the Waldorf System.

The complainant prays that the respondent be decreed to hold both the lease from Thomas A. Lee and his lease to the Waldorf System in trust for her for her proportionate interest therein, and also to hold in trust for her the extended term of each lease. She also prays for an accounting of all the profits accruing under the Waldorf System lease since June 19 1920, less any amount already paid the complainant.

As to the extended term of each lease, there is no room for doubt under the findings of fact made in this case. The respondent availed himself of the confidential relationship existing between him and the complainant to induce her to extend his lease in order that he might reap the advantage arising from the extension of the lease to the Waldorf System, and in carrying out the transaction made false representations as to the profits which had accrued and which were to accrue, and concealed pertinent facts from the complainant.

The respondent holds the property thus acquired for the benefit of the complainant under the familiar doctrine that one acquiring property by a breach of fiduciary duty holds it in trust for the party with whom he stood in such relationship.

The respondent argues that this is the extent of the remedy which can be afforded, since before June 19, 1920, the relationship was that of lessor and lessee merely.

This argument overlooks the determinative facts in the case.

The respondent had assumed by agreement with the complainant functions in respect to her interest in the Lee Block much wider than those attaching to the relationship of lessor and lessee. The complainant was ignorant of the existence of the Astle lease and was induced by the respondent to allow him to act as her confidential adviser and agent in the management of the Lee Block. He clothed himself with the vestments of a trustee and acted in that capacity from 1915. Having so acted and having created a fiduciary relationship, he cannot now divest himself of such relationship and fall back upon the mere legal relationship of lessor and lessee. The complainant is now

entitled to hold him to the obligations of the office which he assumed and in which capacity he dealt with her.

Among the equitable obligations which bound the respondent was the one which forbids a trustee to make a private advantage out of such relationship.

Underhill, Trusts & Trustees, 1st Amer. ed. 1896, p. 322, Art 47;

*Fox* vs. *Mackreth*, 1 White & Tudor, Leading Cases in Equity, 4th Amer. ed. 188 and note.

I rule on the facts, therefore, that the complainant is entitled to a decree declaring:

(a) the respondent to be a trustee of the lease from Thomas A. Lee to himself for the benefit of the complainant to the extent of her interest in the property;

(b) the respondent to be a trustee of the original lease from the respondent to Waldorf System, Incorporated;

(c) the respondent to be a trustee for the extended term under each of the leases in question, namely: the extended term of the lease from Thomas A. Lee to the respondent and the extended term of the lease from the respondent to the Waldorf System, Incorporated;

(d) that the complainant is entitled to an accounting from the respondent for any and all rents and profits accruing to her from the Waldorf System under the original lease to the Waldorf System from the respondent, and the extension thereof, since June 19, 1920, and to have paid over to her one-half of the rents and profits received by the respondent from said Waldorf System, Incorporated, since June 19, 1920, less any amount that may already have been paid to said complainant on account thereof and any proper charges against said complainant's share in said rents and profits;

(e) the respondent to make such transfers, assignments or other disposition of his right, title and interest in and under the lease from Thomas A. Lee to respondent Astle as extended by the instrument executed on June 19, 1920, and his right, title and interest in and under his original lease to the Waldorf System, Incorporated, as extended by the instrument executed on July 1, 1920, as shall be necessary and proper to vest in the complainant a one-half interest in all the benefits accruing under or by virtue of the lease of Thomas A. Lee to respondent as extended, and shall assure to said complainant the right to receive one-half of the rents and profits herein accruing under said lease and the extension thereof. For complainant: George Hurley. For respondent: Grim & Littlefield.